Ned R. Harman v. Commissioner.
Harman v. Commissioner
Docket No. 64708.
United States Tax Court
T.C. Memo 1960-159; 1960 Tax Ct. Memo LEXIS 130; 19 T.C.M. (CCH) 833; T.C.M. (RIA) 60159; July 26, 1960
*130 Held, that petitioner failed to establish that section 72 of the 1954 Code is unconstitutional, in its application to lifetime retirement allowance payments which he received from the New York State Employees' Retirement System under the Civil Service Law of that state. Respondent's determination as to taxable portion of such payments for the year 1954 is approved. Ned R. Harman, pro se, Star Route 8, New Port, N. H. Harold G. Clark, Jr., Esq., for the respondent. PIERCE Memorandum Findings of *131 Fact and Opinion PIERCE, Judge: Respondent determined a deficiency of $47.87 in petitioner's income tax for the year 1954. The sole issue for decision is what portion of the retirement allowance payments totalling $3,005.40, which petitioner received in said year from the New York State Employees' Retirement System, is includible in his gross income for Federal income tax purposes. Findings of Fact Petitioner filed an individual Federal income tax return for the taxable year involved, with the district director of internal revenue for the district of New Hampshire. For a number of years prior to October 1, 1950, petitioner had been employed by the State of New York as an official court reporter. As of the above date, he retired as such employee. The date of his birth is February 7, 1890; and at the time of retirement he was more than 60 years of age. Petitioner, at the time of his retirement, was a member of the New York State Employees' Retirement System which was operated by said state under its Civil Service Law, to provide for payment of retirement allowances and other benefits to civil service employees. In accordance with the provisions of said law, petitioner had *132 up to the time of his retirement made contributions to the System through deductions made from his salary, in the aggregate amount of $12,378.23. Shortly prior to petitioner's retirement, he filed with the Retirement System a direction and election, on one of the System's prescribed forms, that the retirement allowance payable to him under the Civil Service Law should be paid to him without effect being given to any of the optional provisions contained in said statute; and he expressly acknowledged on said election form, that all payment of such allowance would cease on his death. The Retirement System thereupon determined and advised him that he would be entitled to receive a retirement allowance of $250.45 per month during his lifetime. He actually received such retirement allowance payments for the last 3 months of 1950, in the total amount of $751.35; and he also received such payments for each of the calendar years 1951 through 1954, in the total amount of $3,005.40 per year. As to each of the years for which petitioner received the above-mentioned payments, the Retirement System advised him of the portion thereof which was includible in his gross income for Federal income *133 tax purposes. It advised that for the year 1950, the amount so includible in his gross income was $92.84; and that for each of the years 1951 through 1953, the amount so includible was $371.35. As to the year 1954 (following the enactment of the Internal Revenue Code of 1954), the Retirement System advised petitioner that the portion of his retirement allowance payments for said year which was includible in his gross income was $2,760.70. Petitioner, on his Federal income tax return for the year 1954, did not include in his taxable income any portion of the retirement allowance which he received. The respondent however, in his notice of deficiency herein, determined that $2,760.70 of the retirement allowance payments which he received in the year 1954, represented gross income which should have been reported on his return; and this action gave rise to the determination of the deficiency here involved. Opinion Section 72 of the Internal Revenue Code of 1954 introduced a method for taxing annuities which was different from that provided by the preceding 1939 Code. In substance, the 1954 Code provides that an annuitant's gross income shall include any amount *134 received as an annuity, except that there shall be excluded from such gross income, ratable portions of the cost of the annuity which are computed with respect to the annuitant's actuarial life expectancy. Under section 22(b)(2) of the 1939 Code on the other hand, three per cent of the cost of the annuity was included annually in the annuitant's gross income, and the balance of the annuity payments were regarded as nontaxable recoveries of cost until such time as the entire cost of the annuity had been recovered. In the instant case, the respondent determined that the lifetime retirement allowance which petitioner was entitled to receive, qualified as an annuity which was subject to the provisions of section 72 of the 1954 Code; and he determined that the taxable portion of the annuity payments which petitioner received in the year 1954 was $2,760.70, computed in substance as follows: Original cost of annuity (petitioner's
total contributions to Retirement
System)
$12,378.23
Recovered tax free prior to January 1,
1954 (total payments received in
1950 through 1953, less 3 per cent
taxable portion thereof)
8,560.66
Unrecovered cost as of January 1,
1954
$ 3,817.57
Petitioner's life expectancy as of Jan-
uary 1, 1954
15.6 years
Portion of above unrecovered cost ex-
cludable annually, based on said
period of expectancy
$ 244.70
Portion of 1954 payments taxable
($3,005.40 payments, less $244.70
exclusion)
$ 2,760.70
*135 The amount of the 1954 payments so determined by the respondent to be taxable, accords with the advice theretofore supplied to petitioner by the New York State Employees' Retirement System. Petitioner apparently does not dispute that the above computation is correct if section 72 of the 1954 Code is applicable. Rather, he contends that said statute may not constitutionally be applied to tax his annuity, for reasons set forth in his petition as Points I, II, and III. These three points are, in substance, as follows: 1. That as of October 1, 1950, when he retired and became entitled to the lifetime annuity, he had an actuarial life expectancy of 18.2 years; and that Congress, in enacting the 1954 Code, had "no constitutional power or right" to establish a new method for taxing annuities, under which his exclusions for unrecovered cost were computed with respect to his life expectancy as of January 1, 1954, being 15.6 years. 2. That, upon his retirement, he became a member of a large group of retired New York civil service employees who had made contributions to the New York State Employees' Retirement System, through payroll deductions; that all prior and future members of such *136 group in effect contracted with one another to leave to the survivors of the group any portions of their contributions to the Retirement System which they might not recover by reason of their dying prior to the expiration of their respective actuarial life expectancies; that, by reason of such situation, part of the retirement payments which petitioner received in excess of his own cost, represented "inheritances" which he received from deceased members of the group; and that such "inheritances" may not constitutionally be taxed to him as income. 3. That another portion of his retirement payments had their source in funds appropriated and paid by the State of New York into its Retirement System; that at the time he retired, he still had a "vested property right" to continue his employment with the state for an additional 10 to 13 years, at a salary of about $10,000 per year; that upon retirement, he "exchanged" this "vested property right" to future salary for a new property right consisting of the obligation of the State of New York to pay him the annuity for life; and that the monthly payments which he thereafter received pursuant to such "exchange" of "property rights" may not *137 constitutionally be taxed, because such a tax would represent a capital levy. We find no merit whatever in any of the above "Points" advanced by petitioner. As to the first point, the reduction in the actuarial life expectancy employed, from 18.2 years to 15.6 years, resulted solely from the increase in petitioner's age between the time of his retirement on October 1, 1950, to the effective date of the 1954 Code on January 1, 1954. We have found no authority (nor has petitioner cited any) which tends to indicate or establish that Congress, in enacting the 1954 Code, exceeded its constitutional authority in establishing the new method for taxing annuities under which petitioner's unrecovered cost was apportioned on the basis of his life expectancy as of the effective date of the new Code. As to Point II, there is no legal justification for petitioner's unsupported contention that part of his retirement payments was acquired by "inheritance" from various unidentified civil service employees of the State of New York who had predeceased him. The amount of all retirement payments which he received were computed and paid by the State of New York pursuant to the provisions of its Civil *138 Service Law. The fact that the state's reserve funds from which it made payments to retired employees may have been affected by the termination of the annuities of employees who died prior to the periods of their actuarial expectancy, in no way resulted in any "inheritance" by petitioner from such deceased employees. Finally, as to Point III, petitioner did not have any "vested property right" to continued employment or further salary from the State of New York; and he could not create an asset in respect to the same by capitalizing alleged prospective salary that he neither earned nor received. Also, petitioner and the State of New York did not enter into any "exchange" of property rights at the time he retired and elected to qualify for the retirement allowance provided by the state's Civil Service Law. We approve the Commissioner's determination. Petitioner has failed to establish any error therein. Decision will be entered for the respondent.